## POLLARD *v.* LYON.

1. Spoken words charging a woman with fornication in the District of Columbia are not actionable *per se*, as the misconduct they impute, although involving moral turpitude, is not an indictable offence.
2. In an action for such words, inasmuch as the right to recover depends solely upon the special loss or injury which the plaintiff has sustained, it is not sufficient to allege that she "has been damaged and injured in her name and fame:" but such special loss or injury must be particularly set forth; and, if it is not, the declaration is bad in substance.

ERROR to the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

*Mr. Joseph H. Bradley* and *Mr. A. G. Riddle* for the plaintiff in error, and *Mr. Walter S. Cox* for the defendant in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Words both false and slanderous, it is alleged, were spoken by the defendant of the plaintiff; and she sues in an action on the case for slander to recover damages for the injury to her name and fame.

Controversies of the kind, in their legal aspect, require pretty careful examination; and, in view of that consideration, it is deemed proper to give the entire declaration exhibited in the transcript, which is as follows: —

"That the defendant, on a day named, speaking of the plaintiff, falsely and maliciously said, spoke, and published of the plaintiff the words following, 'I saw her in bed with Captain Denty.' That at another time, to wit, on the same day, the defendant falsely and maliciously spoke and published of the plaintiff the words following, 'I looked over the transom-light and saw Mrs. Pollard,' meaning the plaintiff, 'in bed with Captain Denty;' whereby the plaintiff has been damaged and injured in her name and fame, and she claims damages therefor in the sum of ten thousand dollars."

Whether the plaintiff and defendant are married or single persons does not appear; nor is it alleged that they are not husband and wife, nor in what respect the plaintiff has suffered loss beyond what may be inferred from the general averment that she had been damaged and injured in her name and fame.

Service was made, and the defendant appeared and pleaded

the general issue; which being joined, the parties went to trial; and the jury, under the instructions of the court, found a verdict in favor of the plaintiff for the whole amount claimed in the declaration. None of the other proceedings in the case, at the special term, require any notice, except to say that the defendant filed a motion in arrest of judgment, on the ground that the words set forth in the declaration are not actionable, and because the declaration does not state a cause of action which entitles the plaintiff to recover; and the record shows that the court ordered that the motion be heard at general term in the first instance. Both parties appeared at the general term, and were fully heard; and the court sustained the motion in arrest of judgment, and decided that the declaration was bad in substance. Judgment was subsequently rendered for the defendant, and the plaintiff sued out the present writ of error.

Definitions of slander will afford very little aid in disposing of any question involved in this record, or in any other, ordinarily arising in such a controversy, unless where it becomes necessary to define the difference between oral and written defamation, or to prescribe a criterion to determine, in cases where special damage is claimed, whether the pecuniary injury alleged naturally flows from the speaking of the words set forth in the declaration. Different definitions of slander are given by different commentators upon the subject; but it will be sufficient to say that oral slander, as a cause of action, may be divided into five classes, as follows: (1.) Words falsely spoken of a person which impute to the party the commission of some criminal offence involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2.) Words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, it would exclude the party from society; or (3.) Defamatory words falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment. (4.) Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade. (5.) Defamatory words falsely spoken of a person, which, though not in themselves actionable, occasion the party special damage.

Two-propositions are submitted by the plaintiff to show that the court below erred in sustaining the motion in arrest of judgment, and in deciding that the declaration is bad in substance: (1.) That the words set forth in the declaration are in themselves actionable, and consequently that the plaintiff is entitled to recover, without averring or proving special damage. (2.) That if the words set forth are not actionable *per se*, still the plaintiff is entitled to recover under the second paragraph of the declaration, which, as she insists, contains a sufficient allegation that the words spoken of her by the defendant were, in a pecuniary sense, injurious to her, and that they did operate to her special damage.

Certain words, all admit, are in themselves actionable, because the natural consequence of what they impute to the party is damage, as if they import a charge that the party has been guilty of a criminal offence involving moral turpitude, or that the party is infected with a contagious distemper, or if they are prejudicial in a pecuniary sense to a person in office or to a person engaged as a livelihood in a profession or trade; but in all other cases the party who brings an action for words must show the damage he or she has suffered by the false speaking of the other party.

Where the words are intrinsically actionable, the inference or presumption of law is that the false speaking occasions loss to the plaintiff; and it is not necessary for the plaintiff to aver that the words alleged amount to the charging of the described offence, for their actionable quality is a question of law, and not of fact, and will be collected by the court from the words alleged and proved, if they warrant such a conclusion.

Unless the words alleged impute the offence of adultery, it can hardly be contended that they impute any criminal offence for which the party may be indicted and punished in this district; and the court is of the opinion that the words do not impute such an offence, for the reason that the declaration does not allege that either the plaintiff or the defendant was married at the time the words were spoken. Support to that view is derived from what was shown at the argument, that fornication as well as adultery was defined as an offence by the provincial statute of the 3d of June, 1715, by which it was enacted that

persons guilty of those offences, if convicted, should be fined and punished as therein provided. Kilty's Laws, ch. xxvii., sects. 2, 3.

Beyond all doubt, offences of the kind involve moral turpitude; but the second section of the act which defined the offence of fornication was, on the 8th of March, 1785, repealed by the legislature of the State. 2 Kilty, ch. xlvii., sect. 4.

Sufficient is remarked to show that the old law of the province defining such an offence was repealed by the law of the State years before the Territory, included within the limits of the city, was ceded by the State to the United States; and inasmuch as the court is not referred to any later law passed by the State, defining such an offence, nor to any act of Congress to that effect passed since the cession, our conclusion is that the plaintiff fails to show that the words alleged impute any criminal offence to the plaintiff for which she can be indicted and punished.

Suppose that is so : still the plaintiff contends that the words alleged, even though they do not impute any criminal offence to the plaintiff, are nevertheless actionable in themselves, because the misconduct which they *do* impute is derogatory to her character, and highly injurious to her social standing.

Actionable words are doubtless such as naturally imply damage to the party ; but it must be borne in mind that there is a marked distinction between slander and libel, and that many things are actionable when written or printed and published which would not be actionable if merely spoken, without averring and proving special damage. · *Clement* v. *Chivis*, 9 Barn. & Cress. 174; *McClurg* v. *Ross*, 5 Binn. 219.

Unwritten words, by all, or nearly all, the modern authorities, even if they impute immoral conduct to the party, are not actionable in themselves, unless the misconduct imputed amounts to a criminal offence, for which the party may be indicted and punished. Judges as well as commentators, in early times, experienced much difficulty in extracting any uniform definite rule from the old decisions in the courts of the parent country to guide the inquirer in such an investigation; nor is it strange that such attempts have been attended with so little success, as it is manifest that the incongruities

are quite material, and, in some respects, irreconcilable. Nor are the decisions of the courts of that country, even of a later period, entirely free from that difficulty.

Examples both numerous and striking are found in the reported decisions of the period last referred to, of which only a few will be mentioned. Words which of themselves are actionable, said Lord Holt, must either endanger the party's life, or subject him to infamous punishment; that it is not enough that the party may be fined and imprisoned, for a party may be fined and imprisoned for a common trespass, and none will hold that to say one has committed a trespass will bear an action; and he added that at least the thing charged must "in itself be scandalous." *Ogden* v. *Turner*, 6 Mod. 104.

Viewed in any proper light, it is plain that the judge who gave the opinion in that case meant to decide that words, in order that they may be actionable in themselves, must impute to the party a criminal offence affecting the social standing of the party, for which the party may be indicted and punished.

Somewhat different phraseology is employed by the court in the next case to which reference will be made. *Onslow* v. *Horne*, 3 Wil. 186. In that case, De Grey, C. J., said the first rule to determine whether words spoken are actionable is, that the words must contain an express imputation of some crime liable to punishment, some capital offence or other infamous crime or misdemeanor, and that the charge must be precise. Either the words themselves, said Lord Kenyon, must be such as can only be understood in a criminal sense, or it must be shown by a colloquium in the introductory part that they have that meaning; otherwise they are not actionable. *Holt* v. *Scholefield*, 6 Term, 694.

Separate opinions were given by the members of the court in that case; and Mr. Justice Lawrence said that the words must contain an express imputation of some crime liable to punishment, some capital offence or other infamous crime or misdemeanor; and he denied that the meaning of words not actionable in themselves can be extended by an innuendo. 4 Co. 17 *b*.

Prior to that, Lord Mansfield and his associates held that words imputing a crime are actionable, although the words de-

scribe the crime in vulgar language, and not in technical terms; but the case does not contain an intimation that words which do not impute a crime, however expressed, can ever be made actionable by a colloquium or innuendo. *Colman* v. *Godwin*, 3 Doug. 90; *Woolnoth* v. *Meadows*, 5 East, 463.

Incongruities, at least in the forms of expression, are observable in the cases referred to, when compared with each other; and when those cases, with others not cited, came to be discussed and applied in the courts of the States, the uncertainty as to the correct rule of decision was greatly augmented. Suffice it to say, that it was during the period of such uncertainty as to the rule of decision when a controversy bearing a strong analogy to the case before the court was presented for decision to the Supreme Court of the State of New York, composed, at that period, of some of the ablest jurists who ever adorned that bench.

Allusion is made, in the opinion given by Judge Spencer, to the great "uncertainty in the law upon the subject;" and, having also adverted to the necessity that a rule should be adopted to remove that difficulty, he proceeds, in the name of the court, to say, "In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject the party to an infamous punishment, then the words will be in themselves actionable;" and that rule has ever since been followed in that State, and has been very extensively adopted in the courts of other States. *Brooker* v. *Coffin*, 5 Johns. 190; 1 Am. Lead. Cas. (5th ed.) 98.

When he delivered the judgment in that case, he was an associate justice of the court; Chancellor Kent being the chief justice, and participating in the decision. Fourteen years later, after he became chief justice of the court, he had occasion to give his reasons somewhat more fully for the conclusion then expressed. *Van Ness* v. *Hamilton*, 19 Johns. 367.

On that occasion he remarked, in the outset, that there exists a decided distinction between words spoken and written slander; and proceeded to say, in respect to words spoken, that the words must either have produced a temporal loss to the plaintiff by reason of special damage sustained from their being spoken, or they must convey a charge of some act criminal in

itself and indictable as such, and subjecting the party to an infamous punishment, or they must impute some indictable offence involving moral turpitude; and, in our judgment, the rule applicable in such a case is there stated with sufficient fulness, and with great clearness and entire accuracy.

Controverted cases involving the same question, in great numbers, besides the one last cited, have been determined in that State by applying the same rule, which, upon the fullest consideration, was adopted in the leading case, — that in case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject the party to an infamous punishment, then the words will be in themselves actionable.

Attempt was made by counsel in the case of *Widrig* v. *Oyer*, 13 Johns. 124, to induce the court to modify the rule by changing the word " or " into " and; " but the court refused to adopt the suggestion, and repeated and followed the rule in another case reported in the same volume. *Martin* v. *Stillwell*, 13 id. 275. See also *Gibbs* v. *Dewey*, 5 Cowen, 503; *Alexander* v. *Dewey*, 9 Wend. 141; *Young* v. *Miller*, 3 Hill, 22; in all of which the same rule is applied.

Other cases equally in point are also to be found in the reported decisions of the courts of that State, of which one or two more only will be referred to. *Bissell* v. *Cornell*, 24 Wend. 354. In that case, the words charged were fully proved; and the defendant moved for a nonsuit, upon the ground that the words were not in themselves actionable; but the circuit judge overruled the motion, and the defendant excepted. Both parties were subsequently heard in the Supreme Court of the State, Nelson, C. J., giving the opinion of the court, in which it was held that the words were actionable; and the reason assigned for the conclusion is, that the words *impute an indictable offence involving moral turpitude*.

Defamatory words to be actionable *per se*, say that court, must impute a crime involving moral turpitude punishable by indictment. It is not enough that they impute immorality or moral dereliction *merely*, but the offence charged must be also indictable. At one time, said the judge delivering the opinion, it was supposed that the charge should be such, as, if true, would

subject the party charged to an infamous punishment; but the Supreme Court of the State refused so to hold. *Widrig* v. *Oyer,* 13 Johns. 124; *Wright* v. *Page,* 3 Keyes, 582.

Subject to a few exceptions, it may be stated that the courts of other States have adopted substantially the same rule, and that most of the exceptional decisions are founded upon local statutes defining fornication as a crime, or providing that words imputing incontinence to an unmarried female shall be construed to impute to the party actionable misconduct.

Without the averment and proof of special damage, says Shaw, C. J., the plaintiff, in an action on the case for slander, must prove that the defendant uttered language the effect of which was to charge the plaintiff with some crime or offence punishable by law. *Dunnell* v. *Fiske,* 11 Met. 552.

Speaking of actions of the kind, Parker, C. J., said that words imputing crime to the party against whom they are spoken, which, if true, would expose him to disgraceful punishment, or imputing to him some foul and loathsome disease which would expose him to the loss of his social pleasures, are actionable, without any special damage; while words perhaps equally offensive to the individual of whom they are spoken, but which impute only some defect of moral character, are not actionable, unless a special damage is averred, or unless they are referred, by what is called a *colloquium,* to some office, business, or trust which would probably be injuriously affected by the truth of such imputations. *Chaddock* v. *Briggs,* 13 Mass. 252.

Special reference is made to the case of *Miller* v. *Parish,* 8 Pick. 385, as authority to support the views of the plaintiff; but the court here is of the opinion that it has no such tendency. What the court in that case decided is, that whenever an offence is imputed, which, if proved, may subject the party to punishment, though not ignominious, but which brings disgrace upon the party falsely accused, such an accusation is actionable; which is not different in principle from the rule laid down in the leading case, — that if the charge be such, that, if true, it will subject the party falsely accused to an indictment for a crime involving moral turpitude, then the words will be in themselves actionable.

Early in her history, the legislature of Massachusetts defined

the act of fornication as a criminal offence, punishable by a fine, and which may be prosecuted by indictment; and, if the person convicted does not pay the fine, he or she may be committed to the common jail or to the house of correction. None of the counts in that case contained an averment of special damage; but the court held, that, inasmuch as the words alleged imputed a criminal offence which subjected the party to punishment involving disgrace, the words were actionable; and it is not doubted that the decision is correct. Exactly the same question was decided by the same court in the same way twenty-five years later. *Kenney* v. *Laughlin*, 3 Gray, 5; 1 Stat. Mass. 1786, 293. Other State courts, where the act of fornication is defined by statute as an indictable offence, have made similar decisions; but such decisions do not affect any question involved in this investigation. *Vandcrip* v. *Roe*, 23 Penn. St. 182; 1 Am. Lead. Cas. (5th ed.) 103; *Simons* v. *Carter*, 32 N. H. 459; Sess. Laws (Penn. 1860), 382; Purdon's Dig. 1824, 313.

That the words uttered import the commission of an offence, say the court, cannot be doubted. It is the charge of a crime punishable by law, and of a character to degrade and disgrace the plaintiff, and exclude her from society. Though the imputation of crime, said Bigelow, J., is a test, whether the words spoken do amount to legal slander, yet it does not take away their actionable quality if they are so used as to indicate that the party has suffered the penalty of the law, and is no longer exposed to the danger of punishment. *Krebs* v. *Oliver*, 12 Gray, 242; *Fowler* v. *Dowdney*, 2 M. & Rob. 119.

Courts affix to words alleged as slanderous their ordinary meaning: consequently, says Shaw, C. J., when words are set forth as having been spoken by the defendant of the plaintiff, the first question is, whether they impute a charge of felony or any other infamous crime punishable by law. If they do, an innuendo, undertaking to state the same in other words, is useless and superfluous; and, if they do not, an innuendo cannot aid the averment, as it is a clear rule of law that an innuendo cannot introduce a meaning to the words broader than that which the words naturally bear, unless connected with proper introductory averments. *Alexander* v. *Angle*, 1 Crompt. & Jer. 143; *Goldstein* v. *Foss*, 2 Younge & Jer. 146; *Carter* v. *Andrews*, 16 Pick. 5; *Beardsley* v. *Tappan*, 2 Blatch. 588.

Much discussion of the cases decided in the Supreme Court of Pennsylvania is quite unnecessary, as we have the authority of that court for saying that the leading cases establish the principle, that words spoken of a private person are only actionable when they contain a plain imputation, not merely of some indictable offence, but one of an infamous character, or subject to an infamous or disgraceful punishment; and that an innuendo cannot alter, enlarge, or extend their natural and obvious meaning, but only explain something already sufficiently averred, or make a more explicit application of that which might otherwise be considered ambiguous to the material subject-matter properly on the record, by the way of averment or colloquium.    *Gosling* v. *Morgan*, 32 Penn. St. 275; *Shafter* v. *Kinster*, 1 Binn. 537; *McClurg* v. *Ross*, 5 id. 218; *Andres* v. *Koppenheafer*, 3 S. & R. 255.

State courts have in many instances decided that words are in themselves actionable whenever a criminal offence is charged, which, if proved, may subject the party to punishment, though not ignominious, and which brings disgrace upon the complaining party; but most courts agree that no words are actionable *per se* unless they impute to the party some criminal offence which may be visited by punishment either of an infamous character, or which is calculated to affect the party injuriously in his or her social standing.    *Buck* v. *Hersey*, 31 Me. 558; *Mills* v. *Wimp*, 10 B. Monr. 417; *Perdue* v. *Burnett*, Minor, 138; *Demarest* v. *Haring*, 6 Cow. 76; Townsend on Slander, sect. 154; 1 Wendell's Stark. on Slander, 43; *Redway* v. *Gray*, 31 Vt. 297.

Formulas differing in phraseology have been prescribed by different courts: but the annotators of the American Leading Cases say that the Supreme Court of the State of New York, in the case of *Brooker* v. *Coffin*, appear "to have reached the true principle applicable to the subject;" and we are inclined to concur in that conclusion, it being understood that words falsely spoken of another may be actionable *per se* when they impute to the party a criminal offence for which the party may be indicted and punished, even though the offence is not technically denominated infamous, if the charge involves moral turpitude, and is such as will affect injuriously the social standing of the party.    1 Am. Lead. Cas. (5th ed.) 98.

Decided support to that conclusion is derived from the English decisions upon the same subject, especially from those of modern date, many of which have been very satisfactorily collated by a very able text-writer. Addison. on Torts (3d ed.), 765. Slander, in writing or in print, says the commentator, has always been considered in our law a graver and more serious wrong and injury than slander by word of the mouth, inasmuch as it is accompanied by greater coolness and deliberation, indicates greater malice, and is in general propagated wider and farther than oral slander. Written slander is punishable in certain cases, both criminally and by action, when the mere speaking of the words would not be punishable in either way. *Villiers* v. *Mousely*, 2 Wils. 403; *Saville* v. *Jardine*, 2 H. Bl. 532; Bac. Abr. Slander, B; *Keiler* v. *Sessford*, 2 Cr. C. C. 190.

Examples of the kind are given by the learned commentator; and he states that verbal reflections upon the chastity of an unmarried female are not actionable, unless they have prevented her from marrying, or have been accompanied by special damage; but, if they are published in a newspaper, they are at once actionable, and substantial damages are recoverable. 2 Bl. Com. 125, n. 6; *Janson* v. *Stuart*, 1 Term, 784.

Comments are made in respect to verbal slander under several heads, one of which is entitled defamatory words not actionable without special damage; and the commentator proceeds to remark that mere vituperation and abuse by word of mouth, however gross, is not actionable unless it is spoken of a professional man or tradesman in the conduct of his profession or business. Instances of a very striking character are given, every one of which is supported by the authority of an adjudged case. *Lumby* v. *Allday*, 1 Crompt. & Jer. 301; *Barnet* v. *Allen*, 3 H. & N. 376.

Even the judges holding the highest judicial stations in that country have felt constrained to decide, that to say of a married female that she was a liar, an infamous wretch, and that she had been all but seduced by a notorious libertine, was not actionable without averring and proving special damage. *Lynch* v. *Knight*, 9 H. of L. Cas. 594.

Finally, the same commentator states that words imputing to a single woman that she gets her living by imposture and prosti-

tution, and that she is a swindler, are not actionable, even when special damage is alleged, unless *it is proved*, and the proposition is fully sustained by the cases cited in its support. *Welby* v. *Elston*, 8 M. G. & S. 142; Addison on Torts (3d ed.), 788; Townsend on Slander, sects. 172 and note, 516–518.

Words actionable in themselves, without proof of special damage, are next considered by the same commentator. His principal proposition under that head is that words imputing an indictable offence are actionable *per se* without proof of any special damage, giving as a reason for the rule that they render the accused person liable to the pains and penalties of the criminal law. Beyond question, the authorities cited by the author support the proposition, and show that such is the rule of decision in all the courts of that country having jurisdiction in such cases. *Heming* v. *Power*, 10 Mees. & Wels. 570; *Alfred* v. *Farlow*, 8 Q. B. 854; *Edsall* v. *Russell*, 5 Scott, N. R. 801; *Brayne* v. *Cooper*, 5 Mees. & Wels. 250; *Barnet* v. *Allen*, 3 H. & N. 378; *Davies* v. *Solomon*, 41 Law Jour. Q. B. 11; *Roberts* v. *Roberts*, 5 B. & S. 389; *Perkins* v. *Scott*, 1 Hurlst. & Colt. 158.

Examined in the light of these suggestions and the authorities cited in their support, it is clear that the proposition of the plaintiff, that the words alleged are in themselves actionable, cannot be sustained.

Concede all that, and still the plaintiff suggests that she alleges in the second paragraph of her declaration that she "has been damaged and injured in her name and fame;" and she contends that that averment is sufficient, in connection with the words charged, to entitle her to recover as in an action of slander for defamatory words with averment of special damage.

Special damage is a term which denotes a claim for the natural and proximate consequences of a wrongful act; and it is undoubtedly true that the plaintiff in such a case may recover for defamatory words spoken of him or her by the defendant, even though the words are not in themselves actionable, if the declaration sets forth such a claim in due form, and the allegation is sustained by sufficient evidence; but the claim must be specifically set forth, in order that the defendant may be duly notified of its nature, and that the court may have

the means to determine whether the alleged special damage is the natural and proximate consequence of the defamatory words alleged to have been spoken by the defendant. *Haddan* v. *Scott*, 15 C. B. 429.

Whenever proof of special damage is necessary to maintain an action of slander, the claim for the same must be set forth in the declaration, and it must appear that the special damage is the natural and proximate consequence of the words spoken, else the allegation will not entitle the plaintiff to recover. *Vicars* v. *Wilcox*, 8 East, 3; *Knight* v. *Gibbs*, 1 Ad. & Ell. 46; *Ayre* v. *Craven*, 2 id. 8; *Roberts* v. *Roberts*, 5 B. & S. 389.

When special damage is claimed, the nature of the special loss or injury must be particularly set forth, to support such an action for words not in themselves actionable; and, if it is not, the defendant may demur. He did demur in the case last cited; and Cockburn, C. J., remarked that such an action is not maintainable, unless it be shown that the loss of some substantial or material advantage has resulted from the speaking of the words. Addison on Torts (3d ed.), 805; *Wilby* v. *Elston*, 8 C. B. 148.

Where the words are not in themselves actionable, because the offence imputed involves neither moral turpitude nor subjects the offender to an infamous punishment, special damage must be alleged and proved in order to maintain the action. *Hoag* v. *Hatch*, 23 Conn. 590; *Andres* v. *Koppenheafer*, 3 S. & R. 256; *Buys* v. *Gillespie*, 2 Johns. 117.

In such a case, it is necessary that the declaration should set forth precisely *in what way* the special damage resulted from the speaking of the words. It is not sufficient to allege generally that the plaintiff has suffered *special damages*, or that the party has been put to great costs and expenses. *Cook* v. *Cook*, 100 Mass. 194.

By special damage in such a case is meant pecuniary loss; but it is well settled that the term may also include the loss of substantial hospitality of friends. *Moore* v. *Meagher*, 1 Taunt. 42; *Williams* v. *Hill*, 19 Wend. 306.

Illustrative examples are given by the text-writers in great numbers, among which are loss of marriage, loss of profitable employment, or of emoluments, profits, or customers; and it was

very early settled that a charge of incontinence against an unmarried female, *whereby she lost her marriage*, was actionable by reason of the special damage alleged and proved. *Davis* v. *Gardiner*, 4 Co. 16 *b*, pl. 11; *Reston* v. *Pomfreicht*, Cro. Eliz. 639.

Doubt upon that subject cannot be entertained: but the special damage must be alleged in the declaration, and proved; and it is not sufficient to allege that the plaintiff " has been damaged and injured in her name and fame," which is all that is alleged in that regard in the case before the court. *Hartley* v. *Herring*, 8 Term, 133; Addison on Torts, 805; Hilliard on Remedies (2d ed.), 622; *Beach* v, *Ranney*, 2 Hill, 309.

Tested by these considerations, it is clear that the decision of the court below, that the declaration is bad in substance, is correct.                    *Judgment affirmed.*